McIlvaine, J.
In the first place, it is claimed by defendants that the statutes under which this proceeding is sought to be maintained, do not, by necessary construction, authorize such proceeding where the estates sought to be sold became vested before the passage of the acts.
It is admitted that the act of 1865 is retroactive by its terms; but it is claimed that this act merely prescribes the rule by which the act of 1859 must be construed : hence, the words “ has been created,” as contained in the act of 1865, do not refer to an estate created before the passage of the act of 1859. And if this construction be adopted, it is then claimed, that the act of 1859 does not authorize such proceeding where the estates were created before its passage; and therefore there was nolegislative authority for proceeding to order a sale in this case.
*294 It is, no doubt, the duty of courts to construe statute® liberally, in order to save them from constitutional infirmities. We. think, however, that the legislature certainly intended to give the act of 1859 a retrospective as well as a prospective operation.
The first section provides, “ that it shall be competent for the Courts of Common Pleas, on application of the first donee in tail, or for life, to authorize the sale of entailed estates and estates for life with remainder over, when satisfied that the sale would be for the benefit of the applicant and do no substantial injury to the heirs in tail or others, in succession, reversion, or remainder.”
The terms here used are certainly broad enough to include estates created before its passage, and must be held to have that effect in all cases where the sale of such estates in invitum is within the scope of legislative power.
The next question which has engaged the attention of the court in -this case is: Have the heirs of Thomas Williams a vested right in the lands described in the petition ?'
The District Court has certified to us “ that the plaintiff, Euretta Gilpin, is seized of an estate for her natural life ” in the premises, “with remainder to her children after her death, in fee-simple, and in the event of her death without children or their descendants, then to the heirs of her father, Thomas Williams, deceased, in fee-simple.”
It is also certified “ that said estate was created and conferred by the last will and testament of Thomas Williams, deceased.” This will is before us, and by reference to it we find that the testator devised the whole of his real estate (including the lands described in the petition), to certain trustees for certain uses, and among others, that at the expiration of fifteen years from the 1st day of June, 1831, the trustees should “ surrender up the control of the real estate ” and “ release the title hereby vested in them ” as directed by the will, to wit, “to my daughter, Euretta Williams, during her natural life, and to her children after her death forever, one undivided eighth part.”
Now assuming, as we must do under the pleadings and *295 the findings of the District Court, that the trustees have disposed of the legal title, which vested in them under the wiil, as directed by the will, and that the property described in the petition was conveyed by them, as and for the one-eighth part of the whole, to Euretta “for her natural life, and to her children after her death forever,” and the further fact being that Euretta now is and ever has-been childless, the question arises, what has become of the fee-simple title? Is it vested in any one ? If so, in whom?'
¥e need not stop to inquire whether or not the legal title to the fee passed to or remains in the trustees. If it be in them, they hold it in trust for the children of Euretta after her death, or in the event she dies without leaving children or their descendants, then in trust for the heirs of Thomas Williams. If the legal title were found to be in the trustees, the case would not be relieved of any difficulty, as the same-questions would then arise in relation to the equitable estate as otherwise arise in relation to the legal title to the inheritance. Indeed, the case has been prepared and presented upon the theory that the trustees have fully executed the trust and divested themselves of all title to the premises.
We shall therefore dispose of the case upon the theory, that the only estate in these lands which passed to the trustees, was an estate for the natural life of Eüretta, and remainder in contingency to her children — the contingency being that she will die leaving children surviving her.
The right, by means of which the real owner of the fee will eventually come into possession of this property as an estate of inheritance, is vested in some person or persons awaiting the event which will unite the right of property and the right of possession in the same person or persons. We do not believe it is in abeyance, or that it rests in nubibus. It -is clear that it is not in Euretta — her only title is to an estate for her natural life; nor in her children — she has none. It is not in the trustees, as we have assumed. The fee-simple title was in the testator until his death, and if it did not pass by his will to any devisee therein named, it either ceased to exist in any one, or it passed by way of descent to *296 his heirs at law. In our opiuion, it descended to the heirs; subject, however, to be divested, by force of the will, in the event that Euretta shall die leaving children; but subsisting in the meantime in the heirs, for the purpose of drawing the possession to them in the event of her death without children. This right in the heirs is an estate in reversion. It is the residue of the whole estate as owned by their father not disposed of by his will. When the reversion takes place, the heirs will hold by virtue of the title which descended to them at the time of his death, and not by virtue of any new title acquired by purchase. And although their estate may divest upon the happening of an uncertain event, it is now, nevertheless, a vested right.
After much consideration upon this point, we are content to adopt the doctrine as stated by Mr. Fearne, in his work on Remainders, chapter 6, page 351, namely, “ that where a remainder of inheritance is limited in contingency by way of use, or by devise, the inheritance in the meantime, if not otherwise disposed of, remains in the grantor .and his heirs, or in the heirs of the testator, until the contingency happens to take it out of them.”
The rights of these defendants in this property being vested, and not mere expectancies or possibilities of reverter, they are, without doubt, entitled to the protection of those provisions of the constitution which guarantee the inviolability of private property.
3. We have already stated that the interests of the heirs of Thomas Williams in the reversion of this property must be regarded as vested rights or estates; and the record shows that they were created and vested before the passage of these statutes. The question therefore arises, whether the sale of these interests, without the consent of the owners, can be enforced under these statutes without violation of the rights of property as secured by the following provisions of the constitution. Section 19 of article 1 provides that “ private property shall ever be held inviolate, but subservient to the public welfare.” And section 28 of article 2 provides that “ the legislature shall have no power to pass *297 .retroactive laws or laws impairing the obligation of contracts.” There is no pretense that such sale, at the instance of the tenant for life, will subserve the public welfare. This brings us to consider the extent to which private property and vested rights are subject to legislative control and disposition where no question of public welfare intervenes. The consideration of this question does» not involve an inquiry as to the power of the legislature to impose conditions upon the tenure of after-acquired property, or of its power to prevent the vesting of rights in the future. Neither is it necessary to ascertain the power of .the legislature over contingent estates where no present right has vested. There is a clear distinction between contingent estates which may vest, and vested estates which may be defeated, upon the happening of a future event. There are also other rights (so called) which do not rise to the dignity of estates at all, but are mere expectancies or •possibilities, such as those of heirs apparent, possibilities of reverter, etc. It may be admitted that the legislature may control these at its pleasure; but the question before us relates to vested estates in expectancy, although subject to be divested upon the happening of an uncertain future event.
Indeed, it is not claimed by the plaintiffs that private property or vested rights can be taken or divested at the will of the legislature, with or without compensation, except when needed for the public welfare, otherwise than through the administration of remedial laws. They do claim, however, that these statutes must be regarded as remedial laws, and nothing more. The correctness of this claim is the principal question remaining in the ease, as it must be admitted, on the other hand, that legislation, which affects remedies only, is not inhibited by the constitution. It is difficult to draw the line between statutes purely remedial, and therefore subject to legislative control, and those which are in some sort remedial, but at the same time so affect vested rights as to bring them within the constitutional inhibitions.
*298 No one, however, doubts the power of the legislature to-1 subject private property to the satisfaction of fines and penalties assessed against the owner by way of punishment forerimes; nor to subject it to the payment of his debts, etc.. On the other hand, it is equally clear that the sale of one-person’s lands against his will, even under the form of judicial proceedings, in order that another person may enjoy his estate more profitably, would be a plain violation of private property; and a statute authorizing such proceedings-would not be within the scope of purely remedial laws. An attempt to sanction such sales by statute, whether prospective or retrospective in its operation, would be without constitutional warrant.
To enforce a sale in this case, as prayed for by plaintiffs, would be nothing more and nothing less than the appropriation of the estate of one person for the benefit of the-estate of another.
It is said in defense of this proceeding, that it only seeks-to change the estate of the reversioners in kind, and that when so changed it will remain to the same use. The suggestion is of no avail. The proceeding seeks to divest them of their estate in the land; and it is that estate, their property in the land itself, which is declared to be inviolate.
It is also claimed that these statutes furnish a remedy between tenants for life and remaindermen or reversioners, upon the same principle which authorizes partition as between tenants in common.
The right of partition has ever been an incident to such estates, and is based on the right, which each tenant in common has, to hold and enjoy his interest in severalty. Laws in relation to partition are purely remedial, and are used solely for the purpose of putting part owners into possession in severalty in accordance with their respective rights, unless such possession be impracticable, in which case a sale is ordered to the end that the proceeds, in lieu of the property itself, may be aparted among the owners. This is allowed for the reason that separate enjoyment by each of his own can not be otherwise effected.
*299 But the relations, between tenant for life and those in remainder or reversion, are wholly dissimilar. As to the* mode and time of enjoyment, their estates are entirely separate and distinct. The possession or enjoyment by the-tenant for life of all his estate in the premises is not abridged or impaired by maintaining the title of remaindermen or' reversioners intact. There is no joint or common possession as between them, and no such remedy needed to give: them full enjoyment of their respective rights.
Again, it is claimed that the same principle of construction, upon which the sale in this case can be prohibited,, would render all sales, by guardians of infants and lunatics,, of their ward’s lands, illegal and void. Not so. Jus disponendi is an incident to the absolute ownership of property. And in cases where such owner is incompetent in fact and in law to exercise the control and disposition of his property, by reason of infancy or lunacy, a sale made by his-guardian, under authority of law, can not be regarded as made in invitum, but as made with the consent of the owner,, acting through a trustee thereunto duly authorized.
It is also insisted upon by the plaintiffs, that the questions made in this case have been settled against the claim of the defendants, and in favor of the validity of such sales, by a decision of this court rendered in Carroll v. Olmsted, 16 Ohio, 251.
The holding in that case was, in effect, that the legislature may bar an entailment. The legislature, at the instance and for the benefit of the first donees in tail, had authorized by a special act (under the old constitution) the' sale of entailed property and a conveyance of the same to-purchasers as an absolute estate in fee-simple. The sale- and conveyance were accordingly made during the lives of the first donees. After their deaths, their heirs, to whom the estate had been limited by the entailment, and who had been born before the sale and conveyance, brought their action to recover the property from the purchaser.
The decision in the case was made upon a question of evidence, but its effect undoubtedly was to sustain the va *300 lidity of the special act of the legislature, as against the claim of the issue in tail. "We entertain no doubt of the correctness of this decision. There is no principle better settled than that the expectation of an heir presumptive is not a vested right, but a mere possibility. It is not an estate in property, and can be neither transferred or released. Upon this principle it is held that the laws of descent may be changed at the pleasure of the legislature, as to all estates not already cast upon the heir by the death of an ancestor. It is upon this principle that, in this country, estates tail have generally been changed into estates in fee-simple by ■statutes, the validity of which has not been disputed. Cooley Const. Lim. 360; Smith on Stat. and Const. Con. 412; 3 Blackf. 56.
Such statutes operate to increase and render more valuable the interest of the tenant in tail, and are therefore not open to objection by him. And no other person has any vested right, either in possession or expectancy, to be affected by the change. No one is heir to the living. The expectation of the heir presumptive to an entailed estate, must therefore be subject to the same legislative control as in other cases. Cooley Const. Lim. 360; 1 Wash. Real Prop. 81-84; Demill v. Lockwood, 3 Blatch. 56.
If the power to change an estate in fee tail into an estate in fee-simple was disputed by the donor, upon the failure ■of issue in tail, a more difficult question would arise. But •even then, we apprehend, the question would be resolved in favor of the validity of such legislation. At common law the grant of an estate to a man and the heirs of his body was a limited fee; and the probability of a reversion was so remote that the expectation was called a mere possibility of reverter. The fee having passed by the grant to the •donee, no present interest remained in the donor. Such possibility could not be granted. An exception to this rule possibly exists in cases of estates tail after possibility of issue extinct. In the case before us, however, the fee remained in Thomas Williams until his death, and passed by -descent to his heirs (or, by the will, to the trustees for the *301 benefit of the heirs in the event of Euretta’s death without' children); and there can be no doubt that such an interest,, although as regards possession in expectancy, is capable of being granted or released, and is entitled to the protection-of the above-named provisions of the constitution, as are-other vested estates.
Whether these statutes can be enforced for the purpose of putting to sale, without the consent of the owners, remainders, and reversions acquired after their passage, we express no opinion. It is enough now to say that rights of property acquired under existing laws can not be divested at the pleasure of the legislature, although it may have-been within its power to have prevented their acquisition:

Decree for defendants.

Welch, White, Eex, and Gilmore, JJ., concurred.